```
          IN THE UNITED STATES DISTRICT COURT
          FOR THE NORTHERN DISTRICT OF ILLINOIS
                    EASTERN DIVISION
```

| | |
|---|---|
| **HERNANDES RIES,** | |
| Plaintiff, | |
| v. | Case No. 22 C 2740 |
| **CITY OF CHICAGO,** | Judge Harry D. Leinenweber |
| Defendant. | |

## MEMORANDUM OPINION AND ORDER

Before the Court is Defendant's Motion to Dismiss Plaintiff's Amended Complaint [Dkt. No. 21] pursuant to Federal Rule of Civil Procedure 12(b)(6). For the reasons stated herein, Defendant's Motion to Dismiss is granted and Plaintiff's Amended Complaint is dismissed with prejudice.

### I. BACKGROUND

Plaintiff Hernandes Ries ("Plaintiff"), an employee of the City of Chicago Department of Transportation, brought his single count *pro se* Amended Complaint ("Compl.") against the City of Chicago ("Defendant") on August 22, 2022. [Dkt. No. 16.] The Amended Complaint alleges the City of Chicago violated the Genetic Information Nondiscrimination Act of 2008 ("GINA"), 42 U.S.C. § 2000ff, by mandating employees disclose their COVID-19 vaccination status to the city, and by placing Plaintiff on "no-

pay status" after Plaintiff refused to provide the City with his COVID-19 vaccination status. (Compl. ¶¶ 5-7.)

GINA is a federal statute that makes it unlawful for an employer to "discriminate against any employee with respect to the compensation, terms, conditions, or privileges of employment of the employee, because of genetic information with respect to the employee." 42 U.S.C. § 2000ff-1(a). Section 2000ff-1 also makes it unlawful for an employer to "request, require, or purchase genetic information with respect to an employee or a family member of an employee." *Id.* § 2000ff-1(b). Exceptions to this statute do exist, though they are not at issue here. Specifically, Plaintiff alleges a claim under 42 U.S.C. § 2000ff-1, 42 U.S.C. § 2000ff-5 and 42 U.S.C. § 2000ff-6 of GINA. Section 2000ff-1 of GINA is laid out above. Section 2000ff-5 of GINA sets out employer requirements regarding the confidentiality of employees' genetic information and section 2000ff-6 of GINA sets out the statute's remedial and enforcement framework.

## II.  LEGAL STANDARD

"A motion to dismiss pursuant to Federal Rule of Civil Procedure 12(b)(6) challenges the viability of a complaint by arguing that it fails to state a claim upon which relief may be granted." *Camasta v. Jos. A. Bank Clothiers, Inc.*, 761 F.3d 732, 736 (7th Cir. 2014). Pursuant to Federal Rule of Civil

Procedure 8(a)(2), a complaint must include "a short and plain statement of the claim showing that the pleader is entitled to relief." FED. R. CIV. P. 8(a)(2). Under the federal pleading standards, a plaintiff's "factual allegations must be enough to raise a right to relief above the speculative level." *Bell Atl. Corp. v. Twombly,* 550 U.S. 544, 555 (2007). Put differently, a "complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" *Ashcroft v. Iqbal,* 556 U.S. 662, 678 (2009) (quoting *Twombly*, 550 U.S. at 570).

### III. DISCUSSION

Plaintiff's Complaint claims the City's mandate that all employees report their COVID-19 vaccination status violates GINA by requiring employees to provide genetic information. Plaintiff offers four ways that a COVID-19 vaccination status is covered by GINA, but none can prevail. COVID-19 vaccination status does not constitute genetic information under GINA and therefore Plaintiff fails to make a claim upon which relief may be granted. FED. R. CIV. P. 12(b)(6). The Court will address each of Plaintiff's arguments in turn.

First, Plaintiff argues that the unconventional technology of the COVID-19 vaccine that delivers RiboNucleic Acid ("mRNA") and viral vector information to the cell renders vaccine status

- 3 -

"genetic information." Plaintiff emphasizes that the vaccine contains genetic coding that instructs the cell to produce a "spike protein" found on the COVID-19 virus. GINA defines "genetic information" as "information about — (i) such individual's genetic tests, (ii) the genetic tests of family members of such individual, and (iii) the manifestation of a disease or disorder in family members of such individual." 42 U.S.C. § 2000ff(4)(A). GINA goes on to define "genetic test" as "an analysis of human DNA, RNA, chromosomes, proteins, or metabolites, that detects genotypes, mutations, or chromosomal changes." *Id*. § 2000ff(7)(A). Plaintiff never explains how this technology makes it so that vaccination status discloses the individual's own genetic information or that of the individual's family as defined by the statute. Nor is the vaccine's utilization of "innovations in field of genomics" a magic bullet for GINA application. [Dkt. No. 23 (Pl. Response) at 2.) It is not clear to the Court how Plaintiff's vaccination status reveals anything about Plaintiff's "human DNA, RNA, chromosomes, proteins, or metabolites that detects genotypes, mutations, or chromosomal changes" that are included within the definition of genetic testing. 42 U.S.C. § 2000ff(7)(A). In *Anderson v. United Airlines, Inc.,* the court found the same arguments Plaintiff brings here to be unavailing. 2023 WL 5721594, at *8 (N.D. Ill. Sept. 5, 2023)(finding an individual's COVID-19 vaccine is not a "genetic

- 4 -

test" and that COVID-19 vaccination requirements do not implicate GINA).

Moreover, the Equal Employment Opportunity Commission ("EEOC") has also concluded that "[a]n employer requiring an employee to show documentation or other confirmation of vaccination from a health care provider unaffiliated with the employer . . . is not using, acquiring, or disclosing genetic information and, therefore, is not implicating Title II of GINA." *What You Should Know About COVID-19 and the ADA, the Rehabilitation Act, and Other EEO Laws*, U.S. Equal Employment Opportunity Commission, *https://www.eeoc.gov/wysk/what-you-should-know-about-covid-19-and-ada-rehabilitation-act-and-other-eeo-laws#K.14* (last visited September 18, 2023). The Seventh Circuit "frequently look[s] to EEOC guidelines for guidance in discrimination cases, which, while not controlling upon courts by reason of their authority, do constitute a body of experience and informed judgment to which courts and litigants may properly resort for guidance." *Karraker v. Rent-a-Center, Inc.*, 411 F.3d 831, 835 n.2 (7th Cir. 2005).

Second, Plaintiff argues that COVID-19 vaccination status is a medical record, and therefore part of an employee's "family medical history." Because "family medical history" is included within the definition of "genetic information," Plaintiff argues

- 5 -

the City's mandate violates GINA. The Court does not disagree that vaccination status is part of an individual's medical record. But the GINA statute and regulations permit an employer to request non-genetic medical information about a "manifested" disease, disorder, or pathological condition of an employee, even such disease, disorder or condition has a "genetic basis or component." *See* 42 U.S.C. § 2000ff-9; 29 C.F.R. § 1635.12. And Plaintiff offers nothing that suggests vaccination status reveals information about an individual's family medical history.

Plaintiff's reliance on *Equal Employment Opportunity Comm'n v. Grisham's Farm Prods.* is distinguishable. 191 F.Supp.3d 994 (W.D. Mo. 2016). Unlike here, the employer in *Grisham Farm* required information from employees about whether they had consulted with a doctor about the need or recommendation for future diagnostic testing. *Id.* at 998. The Court found this violated GINA because it could result in divulging information about the need for genetic testing in light of family history or risk factors. *Id.*

Third, Plaintiff argues that disclosure of COVID-19 vaccination status constitutes disclosure of an employee's participation in "clinical research." Per GINA, genetic information includes information about "genetic services and participation in genetic research." *Id.* § 2000ff(4)(B). Participation in genetic research includes "participation in

clinical research *which includes genetic services*." *Id*. (emphasis added). Thus, even were the Court to consider that receiving any COVID-19 vaccine constitutes participation in "clinical research," it would not be clinical research that "includes genetic services," which GINA defines as "(a) a genetic test; (b) genetic counseling; or (c) genetic education." *Id.* § 2000ff(6). Plaintiff does not allege that the COVID-19 vaccinate analyzes, obtains, or provides counsel about an individual's DNA, and thus it cannot be considered the kind of clinical research that GINA intended to cover.

Fourth, Plaintiff frames the request for a COVID-19 vaccination status as a request to "disclose the manifestation of disease and disorder." Plaintiff relies on alleged peer-reviewed studies that report increased likelihood of adverse health outcomes resulting from the COVID-19 vaccine. By Plaintiff's logic, requesting information about an employee's age may run afoul GINA because of studies proven to show one's increased likelihood of contracting certain illnesses pursuant to age. Plaintiff again takes GINA's definitional language out of context. GINA defines "genetic information" to include "the manifestation of a disease or disorder *in family members of such individuals*." 42 U.S.C. § 2000ff(4)(A) (emphasis added). Plaintiff has failed to demonstrate that vaccination status has any bearing on the

likelihood of his inheriting a genetic disease or disorder from a family member.

## IV. CONCLUSION

For the reasons stated herein, Defendant's Motion to Dismiss pursuant to Federal Rule of Civil Procedure 12(b)(6) for failure to state a claim is granted. Plaintiff's Amended Complaint is dismissed with prejudice.

**IT IS SO ORDERED.**

                                                                Harry D. Leinenweber, Judge
                                                                United States District Court

Dated: 9/19/2023